## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAWRENCE E. FELDMAN,** | : | |
| | : | |
| **Appellant** | : | |
| | : | **CIVIL ACTION NO.:** |
| **v.** | : | |
| | : | **2:14-CV-5267-CDJ** |
| **AMERICAN ASSET FINANCE, LLC,** | : | |
| | : | |
| **Appellee** | : | |

### MEMORANDUM

**C. Darnell Jones, II**                                                                                    **July 14, 2015**

On appeal is a decision of the Bankruptcy Court for the Eastern District of Pennsylvania granting summary judgment in favor of Appellee American Asset Finance and holding that, pursuant to 11 U.S.C. §523(a)(6), Appellant's debt is not dischargeable in bankruptcy. Appellant also challenges the Bankruptcy Court's decision to grant leave to file an amended complaint. After reviewing the record and the parties' briefing, the Court will **VACATE** the judgment below and **REMAND** for further proceedings consistent with the Court's opinion.

### JURISDICTION

The Bankruptcy Court had jurisdiction over this matter pursuant to 28 U.S.C. §157. Lawrence Feldman seeks appellate review of several decisions of the Bankruptcy Court, specifically an order granting leave to file an amended complaint and the entry of summary judgment on Appellee's nondischargeability claim. Therefore, the Court has jurisdiction over this matter pursuant to 28 U.S.C. §158.

## **BACKGROUND**

The Court writes primarily for the benefit of the parties and thus recounts only the essential facts and procedural history. The predominance of this dispute arises out of a New Jersey default judgment for conversion and defalcation and the effect of that judgment on the dischargeability of Appellant's debt in federal bankruptcy proceedings.

American Asset Finance, LLC ("AAF") filed a lawsuit against Lawrence F. Feldman and his law firm, Lawrence E. Feldman & Associates, on June 27, 2011, in the Superior Court of New Jersey, alleging breach of contract, breach of fiduciary duty and conversion. For reasons that are impertinent to this appeal, the New Jersey Court entered a default judgment against both parties for conversion and defalcation in the amount of $407,433.76. On February 14, 2013, Mr. Feldman filed a voluntary Chapter 7 bankruptcy petition. AAF responded by filing an adversary complaint on May 16, 2013, objecting to discharge of its loan under 11 U.S.C. §523. Mr. Feldman filed a motion to dismiss, which the Bankruptcy Judge granted, dismissing the complaint without prejudice and with leave to refile.

On November 26, 2013, AAF filed an amended adversary complaint, objecting to discharge under 11 U.S.C. §523(a)(2)(A) (false pretenses, fraud) and 11 U.S.C. §523(a)(6) (willful and malicious injury). On May 7, 2014, AAF filed a motion for summary judgment, which the Bankruptcy Court granted. It found that collateral estoppel precluded further litigation regarding the New Jersey judgment. Having so concluded, it determined that the New Jersey judgment, specifically the conversion count, constituted willful and malicious injury, thereby triggering 11 U.S.C. §523(a)(6) and preventing dischargeability. Mr. Feldman appealed. Because the parties have completed their briefing, this matter is ripe for disposition.

**STANDARD OF REVIEW**

An appeal of a final judgment of a bankruptcy court is reviewed under traditional appellate standards of review. *Stern v. Marshall*, 131 S. Ct. 2594, 2603-04 (2011). The District Court reviews a Bankruptcy Court's findings of fact for clear error and its legal conclusions de novo. *In re Blatstein*, 260 B.R. 698, 705 (E.D. Pa. 2001).

**DISCUSSION**

Appellant Feldman argues that the Bankruptcy Court violated Article III of the Constitution, as interpreted in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), by ruling on "twenty-five state-law affirmative defenses or set-offs in his answer to the adversary complaint." (Br. of Appellant, at 21.) Appellee AAF disagrees, arguing that the *Stern* holding is limited to discrete legal claims, not defenses. For the reasons set forth below, the Court has concluded that the Bankruptcy Court's disposition of Appellant's defenses did not contravene *Stern* and violate Article III.

On April 15, 2014, Appellant filed an answer admitting in part and denying in part the allegations of the amended adversary complaint. The answer set forth 19 affirmative defenses or, as Appellant refers to them, set-offs:

127.   Plaintiff's Claims are barred by the doctrines [sic] of laches[.]

128.   Plaintiff's Claims are barred by the doctrines of estoppel, equitable estoppel, and unclean hands.

129.   Plaintiff's Claims are barred by the doctrines of partnership estoppel and privity between CFS and AAF[.]

130.   Plaintiff's Claims are barred by the doctrine of accord and satisfaction.

131.   Plaintiff's Claims are barred by the doctrine of exclusion of Parol [E]vidence.

132.   Plaintiff's claims re barred by a failure of consideration, and/or Plaintiff's own breaches of contract.

133.   Plaintiff's claims are barred by the Plaintiff's own failure to mitigate damages, and defendants [sic] duty to mitigate his own damages, and impossibility of performance.

134.   Plaintiff's claims are barred, in whole or in part, by the doctrines of set – off, fraud, fraudulent inducement, breach of fiduciary duty and confidential relationship, mistake, illegality, lack of capacity, duress, payment, and waiver, ratification, and acquiescence.

135.   Plaintiff's claimed interest entitlements are barred by usury.

136.   Plaintiff's claims are barred by the terms of Plaintiff's own contract.

137.   Plaintiff's claims are barred by the doctrine of unreasonable and unfair contract penalty under NJ and Pa law, and unconscionability[.]

138.   Plaintiff's claims are barred by AAF's Breach of fiduciary duty and confidential relationship[;] Plaintiff's claims are barred by AAF's Fraudulent inducement to contract.

139.   Plaintiff's claims are barred by of [sic] Pennsylvania and Federal anti-Racketeering law.

140.   Plaintiff's claims are barred by unclean hands and unjust enrichment.

141.   Plaintiff's claims are barred by the doctrine of fraud upon the courts.

142.   Plaintiff's fraudulently and unethically obtained judgment against defendant is unenforceable and not entitled to full faith and credit.

143.   Plaintiff and its principals have continually defamed and damaged plaintiff in an amount that is presently undetermined and continuing, with malice, so that defendant is entitled to compensatory and punitive damages.

(Answer at 17-19.)

The Bankruptcy Judge had no occasion to rule on Appellant's affirmative defenses at the pleading stage.[1] At summary judgment, Appellant appears to have raised two of these defenses: laches and unclean hands.

In *Stern v. Marshall*, Vickie Lynn Marshall, a.k.a. Anna Nicole Smith, filed a bankruptcy petition in the United States Bankruptcy Court for the Central District of California. 131 S. Ct. at 2601. Pierce Marshall, the youngest son of J. Howard Marshall II, filed an adversary complaint claiming defamation and seeking a declaration that the defamation claim was nondischargeable in bankruptcy. *Id*. In turn, Vickie Marshall filed a counterclaim for tortious interference. *Id*. Finding that the counterclaim was a core proceeding under § 157(b)(2)(C) and was therefore within its jurisdiction, the Bankruptcy Court issued judgment on Vicki Marshall's tortious interference claim. The United States Court of Appeals for the Ninth Circuit reversed, finding that the counterclaim was not a core proceeding. Vickie Marshall petitioned for a writ of certiorari, which the Supreme Court granted.

On appeal, the Supreme Court concluded that the counterclaim was a "core proceeding" as that term is defined in the Bankruptcy Code. *Id*. at 2606. Specifically, the Court pointed to 28 U.S.C. §157(b)(2)(C), which identified as core proceedings "counterclaims by the estate against persons filing claims against the estate."[2] Nonetheless, the Supreme Court ruled that §157(b)(2)(C) violated Article III of the Constitution because it bestowed Article III judicial authority without concomitant lifetime tenure and salary

---

[1] Of course, Appellant Feldman filed a motion to dismiss the amended adversary complaint, but the Court was required to accept the well-pled facts of the complaint without regard to the factual content of the answer. Fed. R. Bankr. P. 7008 (incorporating by reference Fed. R. Civ. P. 8); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .")

[2] Appellant does not challenge the statutory authority of the Bankruptcy Court to decide his defenses, just the lower court's Constitutional authority to do so.

protection. *Id.* at 2608-09. Contrary to *Stern*, 28 U.S.C. §157(b)(2)(C) did not provide the applicable authority to decide Appellant's defenses. Rather, the Bankruptcy Judge in this case had jurisdiction to decide Appellant's defenses under another provision of §157, specifically §157(b)(2)(J), which identified "objections to discharges" as core proceedings. The necessary implication of that authority is the power to determine defenses to objections to discharge.

The legal distinction between a counterclaim and a defense is illustrated in *Stern* itself. Citing to *Katchen v. Landy*, 382 U.S. 323 (1966), the Court explained:

> Contrary to Vickie's contention, moreover, our decisions in *Katchen* and *Langenkamp* do not suggest a different result. *Katchen* permitted a bankruptcy referee acting under the Bankruptcy Acts of 1898 and 1938 (akin to a bankruptcy court today) to exercise what was known as summary jurisdiction over a voidable preference claim brought by the bankruptcy trustee against a creditor who had filed a proof of claim in the bankruptcy proceeding. A voidable preference claim asserts that a debtor made a payment to a particular creditor in anticipation of bankruptcy, to in effect increase that creditor's proportionate share of the estate. The preferred creditor's claim in bankruptcy can be disallowed as a result of the preference, and the amounts paid to that creditor can be recovered by the trustee.

> Although the creditor in *Katchen* objected that the preference issue should be resolved through a "plenary suit" in an Article III court, this Court concluded that summary adjudication in bankruptcy was appropriate, because it was not possible for the referee to rule on the creditor's proof of claim without first resolving the voidable preference issue. There was no question that the bankruptcy referee could decide whether there had been a voidable preference in determining whether and to what extent to allow the creditor's claim. Once the referee did that, nothing remains for adjudication in a plenary suit; such a suit "would be a meaningless gesture. The plenary proceeding the creditor sought could be brought into the bankruptcy court because the same issue [arose] as part of the process of allowance and disallowance of claims.

> It was in that sense that the Court stated that he who invokes the aid of the bankruptcy court by offering a proof of a claim and demanding its allowance must abide the consequences of the procedure. In *Katchen* one of those consequences was resolution of the preference issues as part of the process of allowing or disallowing claims, and accordingly there was no basis

for the creditor to insist that the issue be resolved in an Article III court. Indeed, the *Katchen* Court expressly noted that it intimate[d] no opinion concerning whether the bankruptcy referee would have had summary jurisdiction to adjudicate a demand by the [bankruptcy] trustee for affirmative relief, all of the substantial factual and legal bases for which ha[d] not been disposed of in passing on objections to the [creditor's proof of] claim.

131 S. Ct. at 2616-17 (citations and internal quotations omitted).

In similar fashion to *Katchen*, the Bankruptcy Court below was merely adjudicating the debtor's defenses to nondischargeability. Putting the legal nuances of a voidable preference claim aside, both issues arise directly out of the process of determining the dischargeability of the debtor's debts. Put simply, Appellant's defenses "[arose] as part of the process of allowance and disallowance of claims." *Id.* at 2616. As the Supreme Court dictated, "he who invokes the aid of the bankruptcy court . . . must abide by the consequences of that procedure." *Id.* Appellant did not seek affirmative relief under state law; rather, its defenses arose solely out of the adjudication of a dischargeability claim. Therefore, the Court finds that the Bankruptcy Court did not err by deciding Appellant's defenses to Appellee's objections to dischargeability.

### Bankruptcy Court Did Not Misapply Relation-Back Doctrine

Appellant next challenges the Bankruptcy Court's decision to allow Appellee to amend his complaint to include a new claim under 11 U.S.C. §523(a)(6) for "willful and malicious injury." In particular, Appellant argues that the Bankruptcy Court improperly applied the relation-back doctrine to Appellee's §523(a)(6) claim, which it added to its amended complaint. He also argues that, even if the Court applied the relation-back doctrine properly, Appellant contravened the order of the Bankruptcy Court by amending the complaint to include a new theory of nondischargeability.

7

Challenges to a court's grant of leave to amend a pleading are reviewed for abuse of discretion. *Singletary v. Pennsylvania Dept. of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) ("We review a district court's decision granting or denying leave to amend a complaint for abuse of discretion."). Challenges to the application of the relation-back doctrine are reviewed de novo. *Glover v. F.D.I.C.*, 698 F.3d 139, 144 (3d Cir. 2012) ("We exercise plenary review of a district court's interpretation and application of Rule 15(c) . . .").

The Bankruptcy Rules provide "[e]xcept as otherwise provided . . . a complaint to determine the dischargeability of debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a)." Fed. R. Bankr. P. 4007(c). The Bankruptcy Rules, however, incorporate by reference the relation-back doctrine as set forth in Federal Rule of Civil Procedure 15(c). Fed. R. Bankr. P. 7015. Rule 15(c) provides:

(c) *Relation Back of Amendments.*

    (1) *When an Amendment Relates Back*. An amendment to a pleading relates back to the date of the original pleading when:

        (A) the law that provides the applicable statute of limitations allows relation back;

        (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

        (C) the amendment changes the party or the naming of the party against whom the claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

            (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

            (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

8

Fed. R. Civ. P. 15(c).

Appellant argues that the relation-back test is conjunctive and that the Bankruptcy Court erred by applying it as a disjunctive test. Appellant's reading of Rule 15(c)(1) is incorrect. The language of the rule, which utilizes the word "or," clearly reveals the intent of its drafters. Court's that have looked at this issue have uniformly found the rule to be disjunctive.[3] *Edwards v. Middlesex Cnty.*, No. 08-CV-6359, 2010 WL 2516492, *3 n. 2 (D.N.J. June 14, 2010) (finding Rule 15(c) to be disjunctive); *Rae v. Klusak*, 810 F. Supp. 983, 984 n. 1 (N.D. Ill. 1993) (same); *Holoway v. Triola*, No. 97-CV-2216, 1997 WL 791472, *3 n. 5 (E.D. La. Dec. 22, 1997) (same); *Morton v. Time Warner Cable*, No. 11-CV-888, 2013 WL 638884, *4 (S.D.N.Y. Feb. 21, 2013) (amended pleading need only meet one prong of Rule 15(c)); *Otsuka v. Polo Ralph Lauren Corp.*, 07-CV-2780, 2008 WL 111233, *4 (N.D. Cal. Jan. 9, 2008) (applying test in disjunctive); *In re Engle Cases*, 45 F. Supp. 3d 1351, 1355 (M.D. Fla. 2014) (same). Read in the disjunctive, Rule 15(c) allows relation back of an amendment when one of three situations applies: (1) the substantive law allows relation back, (2) the "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading," or (3) if the amendment changes or adds a new party, the new party had notice and knew or should have known that the failure to plead the new party was a mistake. The Bankruptcy Court did not commit error by applying Rule 15(c) as a disjunctive test.

---

[3] To clear up any confusion, Rule 15(c)(1)(C)'s tripart test for the addition of a new party is conjunctive, but that was not the case here. Rather, Appellee added new allegations supporting its existing claims and new causes of action. Therefore, Rule 15(c)(1)(A) and (B) are the relevant sections to determine whether the amendments relate back to the filing of the original adversary complaint. As noted in the body of this opinion, that portion of Rule 15 is disjunctive.

Appellant next argues that Rule 4007(c) imposes a strict 60 day filing deadline that is not subject to relation-back. His argument both contradicts the Bankruptcy Rules and evinces a misunderstanding of the legal theory on which relation-back is founded. Bankruptcy Rule 7015 specifically incorporates the relation-back rule set forth in Federal Rule of Civil Procedure 15. Moreover, the relation-back doctrine does not extend the 60 day filing deadline of Rule 4007(c). Rather, it operates under the legal fiction that the amended language was actually filed as of the date of the initial pleading, albeit retroactively. *Cf. Costello v. INS*, 376 U.S. 120, 130 (1964) (speaking about relation-back concept in context of immigration statute); *Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617 (1989) (asset forfeiture context).

Appellant also argues that the amended cause of action "is a different inquiry than [those] that were plead [sic] in the first complaint." (Br. of Appellee, at 24.) Appellant's argument misses the mark by misstating the test for relation back. Rule 15(c)(1)(B) queries whether the "amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out . . . in the original complaint," not whether the "legal inquiry" of both claims are identical. The appropriate question to ask is whether there is a "common core of operative facts uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (internal quotations omitted). While Rule 15(c) does not explicitly permit the addition of a new cause of action, the implication of the rule is that a new cause of action may be added via amendment as long as one prong of the disjunctive test is met. Conversely, application of Appellant's reading of Rule 15(c) would never permit a new cause of action because, by definition, a new cause of action would require "a different inquiry." The plain language of Rule 15(c) dictates otherwise.

As for Appellant's claim that the Bankruptcy Judge allowed an amendment that was outside the scope of its order, the Court's decision to allow the amendment was within the sound discretion of the Bankruptcy Judge. *Cf. Elf Atochem North America, Inc. v. U.S.*, 161 F.R.D. 300, 301 (E.D. Pa. 1995) ("decision whether to grant leave to amend rests within the sound discretion of the trial court"). Indeed, courts should liberally allow amendment under the Federal Rules. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990) (explaining liberal approach to amendment embodied in Rule 15). The Bankruptcy Court does not appear to have abused its discretion, so its decision will not be disturbed on appeal.

### Collateral Estoppel Did Not Bar 11 U.S.C. §523(a)(6) Claim

When this case was before the Bankruptcy Judge, Appellee successfully argued that its New Jersey state court conversion judgment was entitled to issue preclusion. In a karmic turn of events, Appellant now argues that the New Jersey court should have applied collateral estoppel to another case, this time in a Maryland court, to preclude the New Jersey case in the first place. Appellant explains:

> AAF should have been estopped from making a claim of conversion, or arguing that it had an undisputed ownership interest in the fees that were subject to the assignment language of its lending contracts sufficient to support a claim of conversion, or that they had any fiduciary relationship with defendant under the exact same contract, by the holding of *American Asset Finance*[] *LLC*[] *v. Trustees Of The Client Protection Fund of the Maryland Bar*[].

(Br. of Appellant, at 25 (citing *American Asset Fin., LLC v. Trustees of the Client Prot. Fund of the Bar of Maryland*, 216 Md. App. 306 (Md. Ct. Spec. App. 2014)).

It is the "general federal rule that the preclusive effects of prior cases are determined by the law of the [forum where the judgment was entered]." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999). Maryland, the forum in which

*American Asset Finance* was decided, has recognized the existence of two forms of collateral estoppel: traditional collateral estoppel and non-mutual collateral estoppel. "Traditional collateral estoppel, or issue preclusion, requires mutuality of parties, i.e., 'in a second suit *between the same parties*, even if the cause of action is different, any determination of fact that was actually litigated and was essential to a valid and final judgment is conclusive.'" *Rourke v. Amchem Prods., Inc.*, 863 A.2d 926, 933 (Md. 2004). Non-mutual collateral estoppel applies when there is a substitute party in the subsequent action that did not participate in the litigation that produced the judgment. *Id.* Non-mutual collateral estoppel can be used offensively or defensively. *Id.* Offensive non-mutual collateral estoppel applies "[i]f the plaintiff in the second case seeks to foreclose the defendant from relitigating an issue that the defendant previously litigated unsuccessfully against other plaintiffs" while defensive non-mutual collateral estoppel applies "if the defendant seeks to preclude the plaintiff from relitigating an issue that the plaintiff previously litigated unsuccessfully against other defendants." *Id.* Defensive non-mutual collateral estoppel is the relevant inquiry here.

The elements of non-mutual collateral estoppel are:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Wash. Suburban Sanitary Comm'n v. TKU Assocs.*, 376 A.2d 505, 514 (Md. 1977).

Appellee argues that there is no identity of the issues between the Maryland state case and the New Jersey conversion case. The Court agrees. Besides the fact that *American Asset* was decided under the law of a different state, it involved the definition of fiduciary duty in an entirely different context. At issue was a regulation defining fiduciary relationship as "a lawyer acting in a fiduciary capacity traditional and customary in the practice of law, such as a court-appointed lawyer, a personal representative of a probate estate, a trustee of an express trust, a guardian, a custodian acting per statute, or an attorney-in-fact by written appointment." 86 A.3d at 77. The regulation was created to govern the dispersal of funds under the Client Protection Fund of the Bar of Maryland ("The Fund"). In turn, the Fund was created "to maintain the integrity of the legal profession by paying money to reimburse losses caused by defalcations of lawyers." *Id.* at 80 (citation omitted). On appeal to the Court of Special Appeals of Maryland, the Court applied the regulations as the plain language dictated, finding that one could only seek compensation under the fund if there existed a lawyer-client fiduciary relationship. Having so found, the Court affirmed the Fund's decision that the parties had an "adversarial relationship more typical of a security agreement . . . not at all characteristic of a legal services agreement." *Id.* at 81.

Compare Rule 16-811(c) to the more general, common-law definition of fiduciary under Maryland law:

> A fiduciary relationship is presumed to exist as a matter of law in specific situations: between a trustee and beneficiary, guardian and ward, agent and principal, attorney and client, partners in a partnership, [or] corporate directors and their corporation[.]A fiduciary duty may also arise by agreement. Such a relationship involves a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation.

*Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 17 A.3d 155, 162-63 (Md. Ct. Spec. App. 2011) (citations and internal quotations omitted).

> The definition of fiduciary relationship is equally broad under New Jersey law:

> The exact definition of a fiduciary relationship is impossible of statement. The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. Traditional fiduciary relationships include those between trustee and beneficiary, guardian and ward, agent and principal, attorney and client, corporate director and shareholder, and the members of a partnership. The existence of a fiduciary duty is not dependent solely on an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.

*Avon Bros., Inc. v. Tom Martin Const. Co., Inc.*, No. A-740-99 T1, 2000 WL 34241102, *4 (N.J. Super. Ct. App. Div. Aug. 30, 2000) (citations and intern quotations omitted).

The import of this comparison should be clear. The definition of fiduciary relationship used in *American Asset Finance* was a term of art used in a very narrow regulatory context. The common law definition is much broader. In the case at bar, Appellee's theory of fiduciary duty was predicated on a debtor-creditor relationship, not a lawyer-client relationship like in *American Asset Finance*. The merits of Appellee's theory aside, it suffices to say that there was not an identity of issues between *American Asset Finance* and the New Jersey case. [4]

Even if collateral estoppel applied, Appellant's argument suffers from a more fundamental defect. Appellee amended its complaint in the bankruptcy case to omit the fiduciary duty claim it originally brought in its initial complaint. Instead, Appellee brought claims for fraud under 11 U.S.C. §523(a)(2)(A) and willful and malicious injury under §523(a)(6). The Bankruptcy Judge recognized as much and declined to further entertain

---

[4] Appellant argues that the Maryland Court was presented with a conversion claim, but there is no mention of conversion in the court's opinion.

argument regarding the fiduciary duty count. Therefore, Appellant's collateral estoppel argument was and continues to remain moot.

### The Bankruptcy Judge Did Not Err in Ruling on Motion to Dismiss

In the case below, Appellant moved to dismiss Appellee's complaint on two occasions, once after Appellee filed its Initial Adversary Complaint and again after it filed an Amended Adversary Complaint. The Bankruptcy Court granted the first motion with leave to amend and denied the second motion in its entirety. Appellant now argues that the "court below clearly erred in denying [Appellant's] original 7012 Motions to Dismiss for implausibility of the §523(A)(2)(A) fraud count" and, in doing so, failed to consider exhibits attached to its motion to dismiss. After reviewing the record below, the Court has concluded that the lower court did not commit error.

To the extent Appellant argues that the Bankruptcy Judge improperly denied its motion as to the fraud count of the Initial Adversary Complaint, Appellant is once again simply wrong. The Bankruptcy Judge made it clear that it was granting Appellant's motion and dismissing the fraud count of Appellee's complaint without prejudice. To the extent Appellant argues that the dismissal should have been with prejudice, the Court has already explained that leave to amend is reviewed under an abuse-of-discretion standard. *Singletary v. Pennsylvania Dept. of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001). Given that courts should liberally grant leave to amend, this Court will not disturb the Bankruptcy's ruling on appeal.

Even more confounding is Appellant's insistence on challenging the Bankruptcy Court's ruling regarding Appellee's fraud count at this stage in litigation. A review of the docket reveals that Appellee did raise a fraud claim in its Amended Complaint but that

Appellee never moved for judgment on that issue at the close of discovery and that the Bankruptcy Court never entered judgment in Appellee's favor. Perhaps Appellant would have liked the Bankruptcy Court to excise the fraud claim early in the proceedings, but, given that no judgment was entered on the fraud count, the matter is moot.

Appellant next argues that the Bankruptcy Court should have considered the exhibits to his motion to dismiss "because these exhibits are already known to AAF, already in its possession, and authenticity is not denied." (Br. of Appellants at 40.) Appellant misstates the standard of review utilized in reviewing a motion to dismiss. Under the Federal Rules of Bankruptcy Procedure, the Court must accept as true the factual allegations in the complaint. Fed. R. Bank. P. 7008 (incorporating by reference Fed. R. Civ. P. 8); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The logical consequence of that rule is that courts must ignore contradictory facts cited in a motion to dismiss. Of course, exhibits attached to the complaint may be considered but not exhibits attached to a defending party's motion to dismiss. *Friedman v. Lansdale Parking Auth.*, 151 F.R.D. 42, 44 (E.D. Pa. 1993). Given this well-established standard, it is unsurprising that the Bankruptcy Court summarily rejected Appellant's argument.[5]

### CFS Was Not an Indispensable Party

Appellant argues that CFS was an indispensable party to bankruptcy proceedings and that the Bankruptcy Judge erred by failing to dismiss AAF's adversary complaint for failure to join. He explains, "[CFS and AAF] both did claim and continue to claim conflicting

---

[5] Appellant also argues that Appellee "does [not] contest the authenticity of the 2005 AAF/CFS solicitation letter attached to Feldman's brief." (Br. of Appellant, at 40-41.) This representation is misleading. Appellee has not challenged the attachments to Appellant's brief by name, nor was it required to. There was no affirmative concession on its part as to the authenticity and veracity of Appellant's exhibits, and the Court will not construe Appellee's silence as acquiescence.

and competing interests in the same collateral, since CFS claims a first position lien on all attorney fee receivables that will survive a discharge. As a judgment creditor with an [sic] nondischargeable debt, AAF may execute on those same receivables, thus putting Feldman at risk of future inconsistent obligations."

Rule 7019 incorporates by reference Federal Rule of Civil Procedure 19, which states:

(a) Persons Required to Be Joined if Feasible.

    (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

        (A) in that person's absence, the court cannot accord complete relief among existing parties; or

        (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

            (i) as a practical matter impair or impede the person's ability to protect the interest; or

            (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

Appellant's argument evinces a misunderstanding of the Bankruptcy Court's role in this case. Appellant filed for bankruptcy under Chapter 7 seeking the dischargeability of a number of debts. Seeking to avoid dischargeability, Appellee filed an adversary complaint alleging that 11 U.S.C. §523 precluded Appellant from discharging the debt owed to Appellee. Therefore, the relief requested by Appellee is declaratory and would amount to a ruling that Appellant's debt is nondischargeable. To the extent Appellant argues that it may be forced into inconsistent obligations if CFS is not joined to this case, the Court notes that

this is not a collection lawsuit. The Bankruptcy Court did not rule on the allocation Appellant's liabilities vis-à-vis AAF and CFS. Rather, it merely declared that AAF's loan to Appellant was not dischargeable.

### Judge Did Not Apply Wrong Legal Standard for Collateral Estoppel

Appellant challenges the Bankruptcy Court's application of collateral estoppel to Appellee's New Jersey conversion judgment. He contends that the Bankruptcy Court applied the law of the wrong forum, specifically federal law, in determining whether the judgment should be given preclusive effect. Instead, he argues, the Bankruptcy Court should have applied the law of the forum where the judgment was entered, here New Jersey. After reviewing the Bankruptcy Court's opinion, it becomes clear that Appellant's contention is not only without merit, it drifts unabashedly into the realm of frivolity. In fact, it is so blatantly incorrect that it almost assuredly stems from a complete failure to read the relevant portion of the Bankruptcy Court's opinion, which reads:

> Otherwise referred to as issue preclusion, collateral estoppel prohibits the "relitigation of issues that have been adjudicated in a prior lawsuit." *Waris v. Frick*, 2009 WL 2568270, at *3 (E.D.Pa. Aug. 18, 2009) quoting *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). Collateral estoppel is applicable in non-dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284, n.11, 11 S.Ct. 654, 658 (1991). Where the earlier ruling emanated from a state court, a federal court "begins with the fundamental principle that judicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." *In re Leonilla-Spina*, 426 Fed.Appx. 122, 125 (3d Cir. 2011). ***It is the general federal rule that the preclusive effects of prior cases are determined by the law of the prior forum.*** Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 145 (3d Cir. 1999). ***In New Jersey, the prior forum in this instance, litigation of a question will be precluded***:
>
>> if the issue decided in the prior action is identical to the one presented in the subsequent action, if the issue was actually litigated – that is, there was a full and fair opportunity to litigate the issue – in the prior action, if there was a final

> judgment on the merits, if the prior determination was essential to the judgment, and if the party against whom preclusion is asserted was a party or in privity with a party to the proceeding.

*In re Feldman*, 514 B.R. 117, 121-22 (Bankr. E.D. Pa. 2014) (emphasis added).

It cannot be concluded, under any rational reading of the Bankruptcy Court's opinion, that the lower court looked to federal law instead of New Jersey law for the applicable test for collateral estoppel.

### Appellee's Conversion Judgment Should Not Have Been Given Preclusive Effect

As the Bankruptcy Court found, New Jersey collateral estoppel law requires proof of five elements:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the prior proceedings.

*Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006) (citation omitted).

The collateral estoppel issue comes before this Court by way of a prior New Jersey judgment for conversion and defalcation, which Appellee raised in its adversary complaint. Specifically, it argued that the conversion judgment should be given preclusive effect and that the conversion qualified as willful and malicious conduct for which the debt was nondischargeable under 11 U.S.C. §523(a)(6). The precise issue on appeal, therefore, is whether collateral estoppel applies such that the judgment for conversion precludes relitigation under §523(a)(6) or whether the Bankruptcy Court was required to engage in its own fact finding and legal analysis to determine whether Appellant engaged in willful and malicious conduct. The Court finds that collateral estoppel does not apply.

19

**a.) Identity of the Issues**

Applying New Jersey law, the Court found there was an identity of issues because the inquiry for conversion under New Jersey law and the inquiry for willful and malicious injury under 11 U.S.C. §523(a)(6) are identical. Appellant argues that 11 U.S.C. §523(a)(6), which exempts from discharge in bankruptcy any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity," requires an additional element that a conversion claim under New Jersey law does not. Specifically, Appellant argues that a New Jersey conversion claim does not require proof of a mental state on the part of the debtor while §523(a)(6) does. Appellant also raises two ancillary arguments. First, he argues that "[he] had a duty to pay receivables to CFS, not AAF, because of the terms of the four-year line of credit loan brokered by AAF, so long as CFS claimed default." (Br. of Appellant, at 29.) Second, he implores the Court to "reject[] *Doctoroff* as a rigid rule in applying collateral estoppel in dischargeability cases involving defaults . . ." (*Id.* at 30.) Because there is not identity of the issues in this case, the Court will consider Appellant's ancillary arguments no further.

Section 523 enumerates a list of exceptions to the general rule of dischargeability of debt in Chapter 7 bankruptcy proceedings. The one at issue here is §523(a)(6), which exempts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). Nondischargeability under §523(a)(6) requires proof of both willfulness and malice. *In re Coley*, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010) (citing *In re Barboza*, 545 F.3d 702 711-12 (9th Cir. 2008); *In re Porter*, 539 F.3d 889, 893 (8th Cir. 2008); 4 Collier ¶ 523.12[2], at 523-92)) ("The natural reading of this phrase requires that the terms 'willful' and 'malicious' be treated as distinct

elements, with separate meanings in a § 523(a)(6) nondischargeability proceedings . . .").

"The word 'willful' modifies the word 'injury,' indicating that nondischargeability requires

proof of a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that

leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).[6] Willfulness can also be

proven by showing that an action was done in such a manner that it "[was] substantially

certain to produce harm." *In re Conte*, 33 F.3d 303, 309 (3d Cir. 1994). "[M]alice

encompasses an injury that is wrongful and without just cause or excuse, even in the

absence of personal hatred, spite or ill-will." *In re Rezykowski*, 493 B.R. 713, 722 (Bankr.

E.D. Pa. 2013) (internal quotations omitted). As one bankruptcy court explained, "[m]alice

does not mean the same thing for nondischargeability purposes under § 523(a)(6) as it

does in contexts outside of bankruptcy. In bankruptcy, debtor may act with malice without

bearing any subjective ill will toward plaintiff creditor or any specific intent to injure same."

*In re Davis*, 262 B.R. 663, 670 (Bankr. E.D. Va. 2001) (citing *In re Stanley*, 66 F.3d 664, 667

---

[6] The Supreme Court continued:

> Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment *a*, p. 15 (1964) (emphasis added).

> The Kawaauhaus' more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act – for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic – could fit the description. See 113 F.3d, at 852. A "knowing breach of contract" could also qualify. See *ibid*. A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).

*Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998).

(4th Cir. 1995)); 493 B.R. at 722 (citing *In re Wooten*, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010).

In comparison, a New Jersey conversion action requires "the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990) (citations omitted). While conversion requires the "intentional exercise of dominion or control over a chattel," *Chicago Title Ins. Co. v. Ellis*, 978 A.2d 281, 287 (N.J. Super. Ct. App. Div. 2009) (citation omitted), "the [converting party] need not knowingly or intentionally act wrongfully for a conversion to occur," *LaPlace v. Briere*, 962 A.2d 1139, 1145 (N.J. Super. Ct. App. Div. 2009) (citation and internal quotations omitted). Put simply, the dominion or control over the chattel must be intentional, but it is not necessary that the converting party intentionally or even consciously deprive the owner of the use and possession of the property. General, not specific, intent is the hallmark of conversion law.

In light of the difference between the elements of §523(a)(6) and common-law conversion, "court[s] must analyze each set of circumstances on a case-by-case basis and determine whether the conversion is in the nature of an intentional tort or whether the conversion is the result of a negligent or reckless tort." *In re Rezykowski*, 493 B.R. 713, 725 (Bankr. E.D. Pa. 2013) (citations omitted). The Supreme Court has cautioned that a finding of conversion does not automatically dictate a finding of nondischargeability under §523(a)(6):

> There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception. . . . But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. There may be an honest, but mistaken belief,

> engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one.

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934) (internal citations omitted).

The Court below failed to consider whether the conversion embodied in the New Jersey judgment constituted willful and malicious injury. The Supreme Court left no doubt that there can be a conversion without willful and malicious intent. Therefore, there was not a complete identity of the issues.

Appellee appears to concede that malice and willfulness are not necessary elements of conversion under New Jersey law. Nevertheless, it argues that its state-court complaint alleged that Appellant acted voluntarily, intentionally and maliciously and that those facts were admitted when Appellant defaulted. While Appellee's observation is astute, it incorrectly presupposes that all factual content in a complaint is deemed admitted as the result of a default judgment. To the contrary, only well-pled facts are admitted.[7] *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) ("While a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action.") Appellee alleged in the New Jersey complaint, "Debtor's conversion of AAF's property was voluntary, intentional, and malicious" and that "Debtor, according to the pleading, engaged in 'theft by conversion.'" (Br. of Appellee, at 16.) These allegations are legal conclusions and not entitled to a presumption of truth. Moreover, proof of intent was

---

[7] A review of the New Jersey Court default judgment demonstrates that judgment was entered for two counts: conversion and defalcation. However, the Bankruptcy Court found that Appellee only sought relief from dischargeability on the conversion count, and Appellee does not argue on appeal that the Bankruptcy Court failed to consider whether defalcation exempts Appellants debt from dischargeability under §523(a)(6). Therefore, the Court will not consider whether the default judgment for defalcation, which presumably would also raise legitimate collateral estoppel issues, would qualify for exemption under §523(a)(6).

unnecessary to prove Appellee's conversion claim because New Jersey does not require proof of specific intent.

### b.) Essential to the Judgment

Appellant next argues that conversion was not essential to the New Jersey judgment. In particular, he states, "[i]f a finding of count one 'breach of contract' can also support the judgment, or any other count for that matter, than [sic] it cannot be said that a finding of conversion is 'essential to the judgment.'" (Br. of Appellant at 32.) Appellant's argument, if followed to its logical conclusion, would render collateral estoppel inapplicable to any judgment that was entered on more than one legal claim. An issue is no less essential to a judgment merely because it was only one of several grounds on which the judgment was founded. Indeed, Appellant appears to misunderstand the meaning of essential in these circumstances. As the Third Circuit has opined, the purpose of the essentiality prong is to exclude dicta from the preclusive effects of collateral estoppel:

> [I]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal outweighs the interest in avoiding the burden of relitigation.

*Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Com'n*, 288 F.3d 519, 527 (3d Cir. 2002) (quoting Restatement (Second) of Judgments § 27, cmt. h).

The conversion judgment is, by definition, essential to the judgment.

### c.) Actually Litigated

Appellant next argues that the New Jersey judgment was not actually litigated. Appellant is correct. New Jersey law does not consider a default judgment to be actually

litigated for collateral estoppel purposes. *In re Hawkins*, 231 B.R. 222, 231 (D.N.J. 1999) ("Pursuant to New Jersey law, collateral estoppel does not apply to default judgments because such judgments are not 'actually litigated' as required by the second prong in the above test."); *see also Slowinski v. Valley Nat. Bank*, 624 A.2d 85, 90 (Super. Ct. N.J. 1993) (rejecting collateral estoppel because prior judgment was entered by default). Therefore, Appellee's judgment does not satisfy the actually litigated prong of the collateral estoppel requirements.[8]

## CONCLUSION

After a careful review of the record, the Court has concluded that Appellee's New Jersey judgment is not entitled to collateral estoppel because the issues in the New Jersey case and the bankruptcy case are not identical and because the New Jersey case was not actually litigated. In light of the foregoing, the judgment of the Bankruptcy Court is **VACATED** and this matter **REMANDED** for further proceedings consistent with this opinion.


BY THE COURT:


/s/ C. Darnell Jones, II  J.
C. DARNELL JONES, II   J.

---

[8] Appellant also raises a gist-of-the-action defense to the New Jersey judgment, essentially arguing that the New Jersey Court improperly construed what should have been a breach of contract claim as a tort claim. Because this case lacks an identity of the issues with the New Jersey judgment and because the New Jersey case was not actually litigated, there is no need to address the argument further. Similarly, the Court will pass on the question of the balancing of the equities required for application of collateral estoppel under New Jersey law.